**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **JARAD ROSS BARNES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. 5:26-cv-50-MTT-CHW** |
| | : | |
| **COMMISSIONER TYRONE OLIVER, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |

**ORDER**

In accordance with the Court's previous orders and instructions, Plaintiff has filed an amended complaint (ECF No. 7) and a motion for leave to proceed *in forma pauperis* (ECF No. 9). Plaintiff has also filed a motion for an extension of time to comply with the Court's previous orders and instructions (ECF No. 8), which the Court **GRANTS**. Having reviewed Plaintiff's submissions, his motions to proceed *in forma pauperis* ("IFP") (ECF Nos. 2, 4, 9) are also **GRANTED**, and Plaintiff will be given one final opportunity to submit an amended complaint if he wishes to proceed on his claims.

**MOTIONS TO PROCEED IFP**

Plaintiff first seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Plaintiff's submissions demonstrate that he is presently unable to pay the cost of commencing this action. His motions to proceed IFP (ECF Nos. 2, 4, 9) are **GRANTED.**

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I. Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The Clerk of Court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration. It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court

each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

### II. Plaintiff's Obligations on Release from Custody

Plaintiff should keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody. Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## ORDER TO SUPPLEMENT

Because Plaintiff is a prisoner "seek[ing] redress from a governmental entity or [an] officer or employee of a governmental entity," and because Plaintiff is proceeding *in forma pauperis*, the Court is required to conduct a preliminary screening of his claims. *See* 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e). Having conducted such review, the Court requires more information before it can determine whether certain of Plaintiff's claims state a cognizable constitutional claim.

## I. Factual Allegations

Plaintiff's claims arise from an incident that occurred at the Dodge State Prison in Chester, Georgia, on February 5, 2024. ECF No. 7 at 6. According to the Amended Complaint, which is the operative pleading in this case, Plaintiff was attacked by five different inmates on that date. *Id.*[1] He was stabbed multiple times and "sliced in [his] eye." *Id.* No corrections officers were present when this occurred, although the incident was recorded on a camera. *Id.* No one came to assist Plaintiff for nearly two hours after he was stabbed, when another inmate called for help. *Id.* Plaintiff "almost died because [he] lost so much blood," and he spent five days in the hospital, where he received surgery on his eye. *Id.*; *see also* ECF No. 7-1 at 2. Although he was approved for a medical bed after his release from the hospital, unspecified prison officials "changed their minds" and placed him in segregation back at Dodge State Prison. ECF No. 7 at 6. Plaintiff remained in segregation for forty days, and he contends his "[m]edical care was delayed, inadequate, and often conducted through the cell door." ECF No. 7-1 at 2. He also contends he "was forced to self-administer eye medication without proper assistance." *Id.* As a result, "[s]utures were later discovered flapping inside Plaintiff's eye." *Id.* He "required emergency corrective treatment," but he still "permanently lost vision in his left eye." *Id.*

[1] Generally, "[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (alteration in original) (citation omitted)).

Plaintiff contends he "continues to suffer balance issues, trauma, and worsening vision." *Id.*

Plaintiff names as Defendants in this case Deputy Warden of Security Karen Thomas; Deputy Warden of Care and Treatment Khalilah Williams; Counselor Walters; and John or Jane Doe Defendants who represent an "unknown officer responsible for monitoring/security," an unknown "supervisor responsible for staffing/monitoring," and an unknown "medical staff member, if applicable." ECF No. 7 at 5.[2] He contends these Defendants' actions and inaction violated his constitutional rights. As a result, he seeks "compensatory and punitive monetary damages and any other relief deemed just and proper by the Court." ECF No. 7-1 at 2.

## II. Plaintiff's Claims

### *A. Deliberate Indifference to Safety*

Plaintiff first suggests that Defendants were deliberately indifferent to his safety. Prison officials generally have a duty under the Eighth Amendment to protect the inmates under their care from harm inflicted by other inmates. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible

[2] Plaintiff does not name GDC Commissioner Tyrone Oliver as a Defendant in his Amended Complaint. The Clerk is therefore **DIRECTED** to terminate this individual as a party to this case. *See Pintando*, 501 F.3d at 1243. Furthermore, in his Amended Complaint, Plaintiff clarifies that he intends to sue his previous counselor, Defendant Counselor Walters, and not his new counselor, Defendant Walker, who is presently listed as a Defendant on the docket of this case. ECF No. 7 at 5. The Clerk is **DIRECTED** to correct the docket accordingly.

for the victim's safety." *Id.* at 834. Rather, it is only "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." *Id.* at 828. To state a claim for deliberate indifference to an inmate's safety, a prisoner must allege facts to show: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)).

The first element of an Eighth Amendment claim in this context is "a substantial risk of serious harm" and "is assessed under an objective standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (citation omitted). To prevail, the prisoner must show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane*, 835 F.3d at 1307). There are two ways for an inmate to make this showing. *Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016). First, an inmate may proceed on a "particularized threat" theory by attempting to show "that [he] was the target of a specific threat or danger." *Id.* Second, the inmate may proceed on a "dangerous conditions" theory, which requires the inmate to "demonstrate that the prison conditions [he] was subjected to were so dangerous that they resulted in cruel and unusual punishment." *Id.* Under either theory, the inmate must face "a 'strong likelihood' of injury, 'rather than a mere possibility[.]'" *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

To demonstrate deliberate indifference, a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (first citing *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020); and then quoting *Farmer*, 511 U.S. at 839). The subjective component of deliberate indifference requires that the prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." *Marbury*, 936 F.3d at 1234 (alteration in original) (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007)). The prison official must possess "more than a generalized awareness of risk" to the prisoner. *Id.* (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101 (11th Cir. 2014)).

To prevail under a "dangerous conditions" theory, an inmate must show that "serious inmate-on-inmate violence was so pervasive that it constitute[d] a substantial risk of serious harm." *Marbury*, 936 F.3d at 1234. He could also point to "specific features of the jail that render it particularly violent." *Dickinson v. Cochran*, 833 F. App'x 268, 275 (11th Cir. 2020) (holding that plaintiff who "alleged overcrowding, failure to identify and segregate violent inmates, failure to properly search inmates, failure to limit contraband, and failure to adequately supervise inmates" that led to inmate-on-inmate violence could state deliberate indifference claim). These features, however, must still cause the conditions in the prison to be "extreme." *Mountain v. Dozier*, No. 5:20-CV-406 (MTT), 2021 WL 3642031, at *3-4 (M.D. Ga. Aug. 17, 2021) (first citing *Marsh v. Butler Cnty.,*

*Ala.*, 268 F.3d 1014, 1029 (11th Cir. 2001); and then citing *Marbury*, 936 F.3d at 1240 (Rosenbaum, J., dissenting)). To meet the subjective standard under a "particularized threat" theory, an inmate must similarly establish that he provided prison officials with enough details about a specific threat to show "that prison officials could have reasonably inferred that there was a substantial, not merely possible, risk of harm." *Marbury*, 936 F.3d at 1237. This standard does not require an inmate "to identify the person who was threatening him by name, or even necessarily to give the defendants advance notice of a potential attack, so long as other facts put the defendants on notice that he faced a substantial risk of serious harm." *Id.* (citations omitted).

The objective component of deliberate indifference requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she 'knew of ways to reduce the harm' but knowingly or recklessly declined to act." *Marbury*, 936 F.3d at 1233 (quoting *Rodriguez*, 508 F.3d at 620). Because Plaintiff has alleged that multiple defendants acted with deliberate indifference, he must also explain what each named Defendant knew with respect to the alleged danger faced by the Plaintiff. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (holding that "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference," and therefore "[e]ach individual Defendant must be judged separately and on the basis of what that person knows"). In addition, "the essential timeframe under analysis is restricted to the time period before the injury has occurred, when the official had knowledge of the substantial risk of harm, but chose to act unreasonably." *Estate of Owens*, 660 F. App'x at 768.

In this case, the only person to whom Plaintiff alleges he "gave repeated warnings" "about the robberies and violence [he] and others endured" at the prison is Defendant Counselor Walters. ECF No. 7 at 6; *see also* ECF No. 7-1 at 1 ("Plaintiff informed Counselor Walters multiple times that he had been robbed and feared for his life."). Plaintiff does not state that he informed either Defendant Thomas or Defendant Williams that he was personally "repeatedly targeted, threatened, and robbed." ECF No. 7-1 at 1. He has therefore failed to state a "particularized threat" claim against Defendants Thomas or Williams. *See, e.g., Daniels v. Felton*, 823 F. App'x 787, 790 (11th Cir. 2020) (holding that prison officials were not deliberately indifferent to plaintiff's safety where plaintiff "did not identify any risk of harm known to the defendants beyond the generalized danger of housing rival gang members in the same prison," "did not know the inmates who attacked him," "did not have any prior problems with" the inmates who attacked him, and "did not present evidence of any specific prior conflict between his cellmate and the attackers"). Nor has Plaintiff alleged facts sufficient to show that "serious inmate-on-inmate violence was so pervasive" in the dorm where he was attacked "that it constitute[d] a substantial risk of serious harm." *Marbury*, 936 F.3d at 1234. While Plaintiff alleges that gang members committed "robberies and violence" in the dorm, he does not provide any specific facts supporting this claim or any context surrounding it. *Compare Marbury*, 936 F.3d at 1234-35 (allegations that plaintiff witnessed 15 assaults over unspecified period of time were not sufficient to establish that plaintiff "was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm") *with Marbury v. Warden III*, 180 F.4th 1349, 1358 (11th Cir. 2026) (evidence of

200 assaults in two years was sufficient to "establish a genuine factual dispute as to whether [plaintiff] faced a substantial risk of serious harm" in prison where he was attacked). Allegations that he faced "some risk of harm" is not enough. *Marbury*, 936 F.3d at 1235. Plaintiff's claims against the remaining Defendants are therefore subject to dismissal.

*B. Deliberate Indifference to Serious Medical Needs*

Plaintiff also alleges that prison officials failed to provide him with adequate medical care during and after the attack. A prison official who is deliberately indifferent to an inmate's serious medical needs violates the Eighth Amendment to the United States Constitution. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). To state an actionable claim in this context, a plaintiff must allege facts sufficient to establish: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

The first element is objective and requires a plaintiff to set forth a "serious medical need," which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann,* 588 F.3d at 1307. "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243).

Establishing the second element—deliberate indifference—again requires a plaintiff to plausibly allege that the defendant: (1) "was subjectively aware that the inmate

was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade*, 106 F.4th at 1255 (first citing *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020); and then quoting *Farmer*, 511 U.S. at 839). "Subjective recklessness" requires the defendant to be "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff," although a defendant cannot be held liable for a constitutional violation if he responds reasonably to a risk of which he is aware. *Id.* at 1262.

The final element simply requires "that a defendant have a causal connection to the constitutional harm." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). "[A]s with any tort claim, [plaintiff] must show that the injury was caused by the defendant's wrongful conduct." *Id.* at 1326. "Causation, of course, can be shown by personal participation in the constitutional violation." *Id.* at 1327.

Plaintiff's allegations certainly suggest that he had a serious medical need, but he has failed to allege facts sufficient to show that any named Defendants were deliberately indifferent to this need. The only named Defendant Plaintiff mentions in the body of his Amended Complaint other than Defendant Counselor Walters is Defendant Thomas, the deputy warden of security. ECF No. 7 at 6.[3] Plaintiff states that Defendant Thomas told Plaintiff's mother that "she was not familiar with what happened" to Plaintiff and "was just going to ship" Plaintiff, presumably back to Dodge State Prison. *Id.* Even if this allegation

[3] Defendant Counselor Walters could not have been deliberately indifferent to Plaintiff's serious medical needs because she quit while Plaintiff was still in the hospital. ECF No. 7 at 6.

could be liberally construed as indicating that Defendant Thomas assigned Plaintiff to segregation at Dodge State Prison rather than a medical unit, there is nothing in the Amended Complaint to indicate that she knew Plaintiff would not—or did not—receive adequate medical care in segregation. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (holding that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference"). As such, Plaintiff has failed to allege facts sufficient to state an Eighth Amendment medical treatment claim against Defendant Thomas.

Plaintiff also fails to plead any facts that suggest that any other named Defendant had anything to do with his medical treatment or lack thereof. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation). Plaintiff's claims that the named Defendants were deliberately indifferent to his serious medical are therefore also subject to dismissal.

### *C. Doe Defendants and Claims against Defendants in their Supervisory Capacities*

Finally, Plaintiff has attempted to raise several claims against unnamed individuals who are listed simply as "John or Jane Doe." *See, e.g.,* ECF No. 7 at 5. These individuals are loosely identified as officers responsible for "monitoring/security," "staffing/monitoring," and "medical staff." *Id.* As Plaintiff was already advised, however, the general rule is that "fictitious-party pleading is not permitted in federal court."

*Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam). The only exception to this rule is when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his actual name is unknown. *See id.* (citing *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)). Therefore, to proceed against an unnamed defendant, a plaintiff must provide a "description of some kind which is sufficient to identify the person involved so that process can be served." *Dean*, 951 F.2d at 1216 (internal quotation marks omitted). Plaintiff has not met that standard here. *See, e.g., Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1318 n.4 (11th Cir. 2015) (declining to address claims against "John Doe Deputies" because they were "not proper parties" in the action); *Richardson*, 598 F.3d at 738 (plaintiff's description of "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute" was "insufficient to identify the defendant among the many guards employed at CCI"). His claims against the Doe Defendants are therefore subject to dismissal.

It appears Plaintiff may be intending to hold the Doe Defendants liable in their capacity as supervisors at the prison. ECF No. 7 at 5. This may also be true for Defendants Thomas and Williams, both of whom are identified as deputy wardens at the prison. *Id.* To the extent Plaintiff is contending that Defendants Thomas, Williams, or any of the Doe Defendants could be responsible for Plaintiff's injuries in their supervisory capacity, however, he fails to state a claim. It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g., Christmas v. Nabors*, 76 F.4th 1320, 1330 (11th Cir. 2023); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

Instead, supervisors can only be held liable under § 1983 if they personally participated in the alleged constitutional violations or if a causal connection exists between the supervisor's actions and a subordinate's conduct. *Christmas*, 76 F.4th at 1330. This causal connection can be established if

> (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so"; (2) "the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

*Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (alterations in original) (quoting *Douglas*, 535 F.3d at 1322). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (quoting *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010)).

At most, Plaintiff suggests that the dormitory where he was attacked was "known by prison staff to house violent gang members" and was "frequently understaffed and inadequately supervised." ECF No. 7-1 at 1. He does not support these conclusory statements with any specific facts, nor does he allege any facts at all that could suggest a causal link between any Defendant's actions and their subordinates' conduct. These conclusory statements are therefore insufficient to show "widespread abuse" in the prison, that any supervisors had a custom or policy that could have led to the constitutional violation alleged by Plaintiff, or that any supervisors knew their subordinates would act unlawfully and failed to stop them. *Hendrix*, 535 F. App'x at 805 (holding that "vague and

conclusory statements are insufficient to support supervisory liability" (internal quotation marks and citation omitted)). As such, these claims are also subject to dismissal.[4]

**ORDER TO SUPPLEMENT**

The Court notes that the statute of limitations may have run or is about to run on at least some of Plaintiff's claims. "Where a dismissal without prejudice has the effect of precluding the plaintiff from re-filing his claim due to the running of the statute of limitations, it is tantamount to a dismissal with prejudice." *Stephenson v. Warden, Doe*, 554 F. App'x 835, 837 (11th Cir. 2014) (citing *Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993)). The Court is generally required to permit a *pro se* plaintiff one chance to amend his complaint before dismissing with prejudice. *See, e.g., Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019); *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1292 (11th Cir. 2018) ("The district court should have advised [the plaintiff], proceeding pro se, of his complaint's deficiency and given him the opportunity to amend . . . before the court dismissed with prejudice."). Plaintiff is thus **ORDERED** to submit a supplement to the Court that addresses the deficiencies described above if he wishes to proceed with those claims.

**The supplement shall not exceed ten (10) pages in its entirety.** The supplement will be read in conjunction with Plaintiff's Amended Complaint (ECF No. 7), but the Court

---

[4] The Court also notes that there can be no supervisory claims where there is no underlying violation of Plaintiff's constitutional rights. *See, e.g., Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (holding that "a supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right").

will only refer to those two documents to determine whether Plaintiff has stated an actionable claim.[5] Plaintiff need not use the Court's standard form. Instead, it is recommended that Plaintiff write the case number for this case on a sheet of paper and list numbered responses to the following questions (to the extent possible) along with the name of each defendant:

(1) *What* did this defendant do (or not do) to violate your rights? In other words: What was the extent of this defendant's role in the unconstitutional conduct other than being in a supervisory role? Was the defendant personally involved in the constitutional violation? If not, did his actions otherwise cause the unconstitutional action? How do you know?

(2) *When* and *where* did each action occur (to the extent memory allows)?

(3) *How* were you injured as a result of this defendant's actions or decisions? If you have been physically injured, explain the extent of your injuries and any medical care requested or provided.

(4) *How* and *when* did this defendant learn of your injuries or otherwise become aware of a substantial risk that you could suffer a serious injury?

(5) *What* did this defendant do (or not do) in response to this knowledge?

(6) *What* relief do you seek from this defendant?

Plaintiff should state his claims as simply as possible referring only to the relevant allegations against the named defendants in this case; he should not attach supporting documents to his supplement, use legal terminology, or cite any specific statute or case law

[5] The Court does not use the term "supplement" within the meaning of Federal Rule of Civil Procedure 15(d), which defines a supplemental pleading as one "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Instead, the Court is only directing the Court to file additional information about his claims that will be read in conjunction with his pending Amended Complaint (ECF No. 7).

to state a claim, although the Court will presume that Plaintiff's claims are brought under 42 U.S.C. § 1983 unless otherwise specified. *See* Fed. R. Civ. P. 8. If, in his supplement, Plaintiff fails to link a named defendant to a claim, the claim will be dismissed. Likewise, if Plaintiff makes no allegations in the body of his supplement against a named defendant, that defendant will be dismissed.

Plaintiff is cautioned that the opportunity to file a supplement is not an invitation for him to include every imaginable claim that he may have against any state official. Plaintiff will not be permitted to join claims against multiple defendants in one action unless Plaintiff can establish a logical relationship between the claims in accordance with the Federal Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, Plaintiff's motions to proceed IFP (ECF Nos. 2, 4, 9) and his motion for an extension of time (ECF No. 8) are **GRANTED**. Plaintiff shall have **FOURTEEN (14) DAYS** from the date of this Order to file the supplemental information regarding his claims described herein. **Failure to fully and timely comply with the Court's orders and instructions may result in the dismissal of this case.** There shall be no service of process until further order of the Court.

**SO ORDERED** , this 13th day of November, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge